UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

------------------------------------------------------------X

| | |
|---|---|
| LA SHANDA WOODS, | **COMPLAINT** |
| *Plaintiff*, | Case No. |
| - against- | **JURY TRIAL DEMANDED** |
| PANINI AMERICA, INC., | |
| *Defendant*. | |

------------------------------------------------------------X

Plaintiff LA SHANDA WOODS ("Woods" or "Plaintiff"), by her attorneys, complaining of Defendant PANINI AMERICA, INC. ("Panini" or "Defendant"), alleges as follows:

## INTRODUCTION

1. This Action arises from the policy and practice of Panini (a sports collectibles company) of discriminating against its non-Caucasian employees for numerous years in violation of 42 U.S.C. §1981 ("Section 1981"), by promoting a racially hostile work environment for non-Caucasian employees and deliberately holding back such employees by denying them the same opportunities of advancement as Panini provides to its Caucasian employees.

2. Panini's discriminatory practices are even more insulting due to the fact that Panini relies heavily upon the success of African-American and other non-Caucasian athletes in the sale of Panini's products (75% or more of Panini's business).

3. Woods, who is African-American, clearly was a victim of Panini's discriminatory practices, including being subject to a racially hostile work environment.

## JURISDICTION

1

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as the claims alleged herein arise under the laws of the United States, namely Section 1981.

5. Venue lies in this District pursuant to 28 U.S.C. § 1391, because Panini resides in Texas, is subject to the personal jurisdiction of Texas courts, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

6. This Court has personal jurisdiction over Panini because Panini's headquarters are in Texas, and the discriminatory conduct alleged herein took place in Texas. Panini does business in Dallas County, Texas. Its principal place of business is located at 5325 FAA Blvd., Suite 100, Irving, Texas 75061. Panini's contacts with the State of Texas are systematic and continuous, and the acts of discrimination that are the basis for the claims against Panini took place in Dallas County, Texas.

**PARTIES**

7. Plaintiff is an individual residing in Texas and is African-American.

8. Panini is a corporation organized and incorporated under the laws of Delaware with a principal place of business in Irving, Texas.

**ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

9. Panini is a company that, among other things, sells trading cards and collectibles using the name and likeness of athletes across the globe.

10. While the backbone of Panini's business centers upon the accomplishments of numerous world-class athletes, most of which are persons of color, it has steadfastly maintained a policy and practice of denying non-Caucasian employees deserved promotions and equal pay as

2

compared to Caucasian employees, and acquiescing and promoting a racially based hostile work environment for non-Caucasian employees.

11. Furthermore, non-Caucasian employees are noticeably absent from leadership positions at Panini, which only further evidences that Panini has systematically denied career advancement to people of color.

12. Additionally, Panini went to great lengths to physically separate white employees from employees who were people of color. Specifically, Panini had a vast majority of the non-Caucasian employees working in a storage room, while almost all of the white employees worked in normal office space outside of the storage room.

13. Panini management also often labeled non-Caucasian employees as troublemakers who had an "attitude," while never using such derogatory terms when describing white employees.

14. The proof will also show that upper management at Panini was a tight-knit group of white males – the proverbial "good ole boys club," which continuously promoted white employees and kept racial minorities out of management.

15. Notably, Panini also failed to have any discrimination complaint procedures and provided employees with no formal avenues to complain about racial discrimination. Panini also had no anti-discrimination training for employees.

16. In this regard, in May of 2023, the civil rights group Until Freedom and Black Church PAC issued a letter to Panini and the NBA, NFL, MLB, National Women's Soccer League, MLS, and the NHL (the "Open Letter"), which highlighted Panini's discriminatory hiring and employment practices.

17. The Open Letter also demanded that Panini institute employment policies that ensure adequate representation and fair treatment throughout its business structure.

18. Woods is an African-American female who worked for Panini in Texas from 2012 to April 2023.

19. In approximately 2013 or 2014, after working as an Acquisition Assistant in Panini's Acquisition Department for over one year, Woods applied for an open position as an Assistant Manager in that same department.

20. Woods was qualified for this position because she was already performing tasks of an Assistant Manager.

21. She was denied this promotion and this position was given to a white male.

22. Panini falsely informed her that she could not have a position of Assistant Manager because Panini needed her to stay in her place and it did not have anyone who could fill her position.

23. This assertion was false because Panini could have easily filled Woods's position of Acquisition Assistant, just as Panini did with any other job that needed to be filled.

24. The true reason that Woods was denied this position was her race.

25. But for her race, Woods would have received this promotion.

26. In approximately 2017, after working as an Acquisition Assistant for approximately five years, Woods applied for an open position of Data Entry.  Woods was qualified for this position because she was already performing tasks of Data Entry.

27. She was denied this promotion and this position was given to a white male.  Panini informed her that she should not apply for this position because it was purportedly a demotion.

28. This assertion was false because Panini routinely hired white people for Data Entry, and those white employees were paid more than Woods and were quickly promoted to Assistant

Manager. The true reason that Woods was denied this position was her race. But for her race, Woods would have received this promotion.

29. In approximately 2018 and 2019, during her spare time while she was not being paid by Panini, Woods trained in the accounting division in the Panini Authentic department in order to be promoted to that department. She expressed her interest in that department to Panini management, but management ignored her interests due to her race. But for her race, Woods would have received a promotion to accounting in the Panini Authentic department.

30. Panini's continued denial of advancement to Woods was part and parcel of Panini subjecting Woods to a racially hostile work environment which constitutes a continuing violation of Section 1981.

31. Such denials of advancement were due to intentional discrimination. Such discrimination was systematic and pervasive, it detrimentally affected Woods, and it would have detrimentally affected a reasonable person of Woods's race under the same circumstances. Such discrimination was part of Panini's overall policy and practice of (a) not promoting racial minorities, and (b) harassing non-Caucasian employees based upon their race. Such discrimination constitutes a continuing violation of Section 1981.

32. Woods was also subject to Panini's racist hostile work environment throughout her tenure at Panini through racial harassment. For example, in approximately 2016 or 2017, a white manager named Toni Spakes ("Spakes") verbally harassed Woods based upon her race.

33. Woods attempted to have a civil conversation with Spakes about organizing a Panini storage room, but when she offered him suggestions, Spakes began screaming at her, using profanities and throwing things around the room.

34. Spakes never spoke to white employees that way and was only abusive with Woods due to her race. But for her race, Spakes would have treated her with common decency and respect.

35. During Woods's employment at Panini up until April 2023, white management would have out-of-office meetings, lunches, dinners and holiday celebrations. Almost all of the persons invited to these events were white. Woods and other non-Caucasian employees were not invited and thus were overtly segregated from white co-employees and missed out on business opportunities and career development that occurred during these events.

36. At the height of the Covid-19 pandemic in 2020, numerous Panini employees were allowed to work from home at normal pay to avoid a Covid-19 infection. However, Woods and another African-American employee were furloughed and only received unemployment compensation.

37. Soon thereafter, Panini wished to avoid employees having unemployment compensation, and thus directed that Woods and the other above-referenced African-American employee to work at the Panini office.

38. Woods and the other above-referenced African-American employee were the only employees directed to work at the office for the Acquisition Department for three to four months during the Covid-19 pandemic, while Caucasian employees were allowed to work from home.

39. Woods requested Panini management to have the office disinfected to avoid the Covid-19 virus, especially since that virus was clearly in the building and one of Woods's co-employees tragically died from the virus during that time period. However, Panini ignored that request.

40. But for Woods's race, Woods would not have been furloughed and then compelled to work in the office without proper protection against Covid-19.

41. In 2022, Panini denied Woods's personal time off ("PTO") pay when Woods had approved time off from work. On multiple occasions in 2022, Woods got permission from Panini to take PTO, and thus she took PTO. However, Panini failed to pay Woods PTO for those time periods. Panini never denied PTO pay to white employees, and but for her race, Woods would have received her PTO pay.

42. The harassment detailed above was due to intentional discrimination. Such discrimination was systematic and pervasive, it detrimentally affected Woods, and it would have detrimentally affected a reasonable person of Woods's race under the same circumstances. Such discrimination was part of Panini's overall policy and practice of (a) not promoting racial minorities, and (b) harassing non-Caucasian employees based upon their race. Such discrimination constitutes a continuing violation of Section 1981.

43. In 2023, after being employed by Panini for over ten years and routinely being denied promotions due to her race, suffering a racial hostile work environment and witnessing management that was dominated by Caucasians who denied advancement to minorities, Woods was compelled to quit her job at Panini. Any reasonable person would have felt compelled to resign under the circumstances.

**FIRST CLAIM FOR RELIEF**

*(Hostile Work Environment in Violation of Section 1981)*

44. Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

45. As set forth in detail above, Defendant discriminated against Woods and harassed her on the basis of her race (African-American).

46. As demonstrated above, the harassment and discrimination suffered by Woods was intentional and malicious, and it constituted a continuing violation. It was extraordinarily severe and altered the conditions of Woods's working environment because it created an atmosphere of abuse and intimidation wherein Woods's own supervisors participated and condoned the racist misconduct, and it led to Woods's constructive discharge.

47. As described above, Woods's supervisors used their authority to create and continue the discriminatory abusive working environment and failed to take any appropriate remedial action.

48. As a result, Woods is entitled to compensatory damages for, *inter alia*, emotional distress, loss of enjoyment of life and other non-pecuniary losses in the maximum amount permitted by the law, as well as withheld PTO pay.

49. Because Defendant acted with malice and reckless indifference to Woods's federally protected rights, Woods is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

50. Woods is also entitled to reasonable attorney's fees and expenses to the extent permitted by law.

## **SECOND CLAIM FOR RELIEF**

*(Constructive Discharge
in Violation of Section 1981)*

51. Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

52. As set forth in detail above, Defendant discriminated against Woods, harassed her on the basis of her race, and created a hostile work environment.

53. In 2023, after being employed by Panini for over ten years and routinely being denied promotions due to her race, suffering a racial hostile work environment and witnessing management that was dominated by Caucasians who denied advancement to minorities, Woods was compelled to quit her job at Panini.

54. Any reasonable person would have felt compelled to resign under the circumstances.

55. As a result, Woods is entitled to compensatory damages for, *inter alia*, lost wages and income, emotional distress, loss of enjoyment of life and other non-pecuniary losses in the maximum amount permitted by the law.

56. Because Defendant acted with malice and reckless indifference to Woods's federally protected rights, Woods is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

57. Woods is also entitled to reasonable attorney's fees and expenses to the extent permitted by law.

**WHEREFORE**, Plaintiff demands Judgment as follows:

A. Plaintiff's actual damages and punitive damages as determined at trial;

B. Reasonable attorney's fees and expenses;

C. Costs and disbursements; and

D. Such other and further relief as deemed just and proper by this Court.

Dated: December 6, 2023

Respectfully submitted,

*/s/ Greg McAllister*

**GREG McALLISTER**
State Bar No. 24071191
mcallister@roggedunngroup.com

**ROGGE DUNN GROUP, PC**
500 N. Akard Street
Suite 1900
Dallas, Texas 75201
Telephone: (214) 888-5000
Facsimile: (214) 220-3833

**ATTORNEYS FOR PLAINTIFF**